# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *JOSEPH DONAHUE, JR.,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 09-180-P-H* |
| | ) | |
| *CLAIR CAR CONNECTION, INC., et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

## RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT

Defendants Clair Car Connection, Inc., Clair Saco Volkswagen, Inc. ("Clair VW"), and

Clair Ford, Lincoln Mercury, Inc. ("Clair Ford") seek summary judgment as to all claims against

them on the ground that the plaintiff has failed to generate a triable issue as to whether he was

discriminated against on the basis of age in violation of the Age Discrimination in Employment

Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Maine Human Rights Act ("MHRA"), 5

M.R.S.A. § 4551 *et seq*. *See* Defendants' Motion for Summary Judgment ("Motion") (Docket

No. 37) at 11-18.[1]  In addition, Clair VW and Clair Ford seek summary judgment on the basis

that neither entity ever employed the plaintiff. *See id*. at 10-11.  For the reasons that follow, I

recommend that summary judgment be granted as to Clair VW and Clair Ford but otherwise

denied.

## I.  Applicable Legal Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue

---

[1] The plaintiff's first amended complaint also names Lupo LLC, Staretz LLC, Bensol LLC, and Sawdran LLC as
defendants. *See* First Amended Complaint ("Complaint") (Docket No. 12) at 1.  They have since been dismissed.
*See* Plaintiff's Notice of Dismissal of Defendants That Do Business as Prime Motor Group (Docket No. 20).

as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are

not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008).

## II. Factual Background

The parties' statements of material facts, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56, with disputes in cognizable facts resolved in favor of the plaintiff as nonmovant, reveal the following relevant facts.

The plaintiff is 74 years old. Plaintiff's Statement of Additional Material Facts ("Plaintiff's Additional SMF"), commencing on page 20 of Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposing SMF") (Docket No. 46), ¶ 78; Defendants' Response to Plaintiff's Statement of Additional Facts ("Defendants' Reply SMF") (Docket No. 56) ¶ 78. He began working at Clair Saco Honda in 1996. *Id*. ¶ 79.[2] About three or four years after he started working there, he became parts manager. *Id*.[3] With the exception of a period of time when he stepped down from his parts manager position so that his son could have it, he continued to manage the parts department at Clair Saco Honda until his termination from employment in May 2007. *Id*.

Prior to November 2007, Clair Saco Honda was a dealership located in Saco, Maine. Defendants' Statement of Material Facts in Support of Motion for Summary Judgment ("Defendants' SMF") (Docket No. 38) ¶ 2; Plaintiff's Opposing SMF ¶ 2. From 2004 to

---

[2] The defendants object to this paragraph and a number of others on the ground that they contain multiple sentences with multiple purported factual assertions in violation of the requirement of Local Rule 56 that statements of facts be "short and concise." *See* Defendants' Reply SMF ¶¶ 79-81, 83-84, 86-91, 94-95, 97, 99-100, 103, 108-09, 111-13, 115, 117, 120-21, 125, 128-29, 133-35, 137-42, 144, 146-49, 152, 154, 156. These objections are overruled. Local Rule 56 does not mandate that each paragraph contain only one sentence. *See, e.g., United States v. Cap Quality Care, Inc*., No. 05-163-P-H, 2006 WL 3591306, at *6 n.3 (D. Me. Dec. 7, 2006) (rec. dec., *aff'd in part, rejected in part on other grounds*, May 2, 2007). Nor are the plaintiff's paragraphs, no one of which exceeds 12 lines, *see* Plaintiff's Response to Defendants' Motion To Strike ("Strike Response") (Docket No. 57) at 2, so lengthy as to merit their disregard, *see, e.g., Cap Quality*, 2006 WL 3591306 at *6 n.3 (when none of paragraphs consisted of more than 11 typed lines, any violation of Local Rule 56 was not of sufficient magnitude to support the sanction of striking those paragraphs). Finally, the plaintiff typically supplies record citations after each sentence in his multiple-sentence paragraphs, thereby, in those instances, meeting the requirement that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Loc. R. 56(f).

[3] My recitation incorporates the defendants' qualification.

November 2007, Michael Clair was the dealer for the Clair Saco Honda dealership. *Id*. ¶ 3. During that time, Clair was also the dealer for several other dealerships in Saco, including Clair Ford, Clair VW, and Clair Saco Mazda. *Id*. ¶ 4. Clair Saco Honda, along with the other Clair dealerships in Saco, was sold to Prime Auto Group effective in November 2007. *Id*. ¶ 5. The plaintiff never performed work for any Clair dealership other than Clair Saco Honda. *Id*. ¶ 6.[4] Specifically, he never performed work for Clair Ford or Clair VW. *Id*. ¶ 7.[5]

### A. Fisher Supervises Plaintiff; Lavallee Transfers to Honda

When the plaintiff started working at Clair Saco Honda, Paul Fisher was its general manager. Plaintiff's Additional SMF ¶ 80; Defendants' Reply SMF ¶ 80. Fisher promoted the plaintiff to parts manager and served as his immediate supervisor after that promotion. *Id*. Fisher continued to serve as the plaintiff's immediate supervisor until Fisher's separation from Clair Saco Honda in October 2005. *Id*. Fisher testified that the plaintiff did a good job as parts manager. *Id*. ¶ 81.[6] The plaintiff did everything Fisher asked of him. *Id*. Fisher had "all the confidence in the world in" the plaintiff. *Id*. According to Fisher, the plaintiff was "old school" and wanted everyone who worked with him to be busy all of the time. *Id*.

In the spring of 2005, Fisher hired Kevin Lavallee to work in the parts department with the plaintiff. *Id*. ¶ 86. Lavallee transferred from the Ford/Mazda store. *Id*. As of April 26, 2010, Lavallee was 35 years old. *Id*. ¶ 85. He is now 36. *Id*.[7] Fisher wanted to hire someone with parts experience to work with the plaintiff because he believed that the plaintiff might retire in the near future. Plaintiff's Additional SMF ¶ 83; Deposition of Paul Fisher ("Fisher Dep.")

---

[4] My recitation incorporates the plaintiff's qualification.
[5] My recitation incorporates the plaintiff's qualification.
[6] The defendants qualify this statement, asserting, *inter alia*, that Fisher was not involved in the decision whether to lay the plaintiff off. Defendants' Reply SMF ¶ 81; Declaration of Tim Perkins ("Perkins Decl.") (Docket No. 38-1), attached to Defendants' SMF, ¶¶ 8-9.
[7] My recitation incorporates the defendants' qualification.

(Docket No. 38-2), attached to Defendants' SMF, at 16. He believed this, in part, because of the plaintiff's age. Plaintiff's Additional SMF ¶ 83; Defendants' Reply SMF ¶ 83.[8] Fisher told Clair that he wanted to bring someone into the parts department at Clair Saco Honda who could replace the plaintiff in the event that he retired. Plaintiff's Additional SMF ¶ 84; Fisher Dep. at 17.[9] Clair indicated that Lavallee was available to move into the parts department at Clair Saco Honda. Plaintiff's Additional SMF ¶ 84; Defendants' Reply SMF ¶ 84.

Clair informed Lavallee that he was being transferred to Clair Saco Honda. *Id.* ¶ 90. He told Lavallee that they decided to transfer him to that store because the plaintiff was going to retire. Plaintiff's Additional SMF ¶ 90; Deposition of Kevin Lavallee ("Lavallee Dep.") (Docket No. 38-4), attached to Defendants' SMF, at 20. Clair denies that he said this to Lavallee or ever spoke to anyone about when or if the plaintiff would retire. Plaintiff's Additional SMF ¶ 91; Defendants' Reply SMF ¶ 91.

When Lavallee transferred to Clair Saco Honda in 2005, he had worked as the Mazda parts manager since 2000 but had never worked at Clair Saco Honda. *Id.* ¶ 87. When Lavallee started working at Clair Saco Honda, the plaintiff served as his immediate supervisor. *Id.* ¶ 88. The plaintiff continued to serve as Lavallee's immediate supervisor until Lavallee was transferred to a newly opened Clair Kia store in early 2007. *Id.*

At about the time that Fisher made the decision to hire Lavallee to work at Clair Saco Honda, he asked the plaintiff when he planned to retire. Plaintiff's Additional SMF ¶ 89; Plaintiff's Answers to Defendants' First Set of Interrogatories ("Plaintiff's Interrog. Ans.")

---

[8] The defendants qualify this statement, asserting that when Fisher was asked simply why he wanted an experienced person to work the counter, he testified that it takes time to train a new person on parts and he was unsure whether the plaintiff would pass a pending eye examination. Defendants' Reply SMF ¶ 83; Fisher Dep. at 15-16.
[9] The defendants' objection that this statement is not supported by the citation given, *see* Defendants' Reply SMF ¶ 84, is overruled. The defendants further qualify the statement by asserting that Clair denied discussing the subject of the plaintiff's possible retirement. *See id.*; Continued Deposition of Michael S. Clair ("Clair Dep. II") (Docket No. 46-14), attached to Plaintiff's Opposing SMF, at 77.

(Docket No. 46-9), attached to Plaintiff's Opposing SMF, ¶ 6. The plaintiff told Fisher that he had no plans to retire. *Id*. He told Fisher that, when he decided to retire, he would let Fisher know and give him plenty of notice so that they could find someone to replace him. *Id*. This was not the only time that Fisher asked the plaintiff about his retirement plans. *Id*.

During the period of time that Lavallee worked at Clair Saco Honda under the plaintiff's supervision, the plaintiff brought problems with Lavallee's performance to Fisher's attention. Plaintiff's Additional SMF ¶ 94; Defendants' Reply SMF ¶ 94. Lavallee was playing on the computer when he should have been working. Plaintiff's Additional SMF ¶ 94; Fisher Dep. at 19. He was also taking long lunch breaks. Plaintiff's Additional SMF ¶ 94; Fisher Dep. at 19-20.[10] Lavallee acknowledged at his deposition that the plaintiff spoke to him about his performance. Plaintiff's Additional SMF ¶ 95; Defendants' Reply SMF ¶ 95. He acknowledged that the plaintiff told him that he needed to use the internet less. Plaintiff's Additional SMF ¶ 95; Lavallee Dep. at 40.[11] He also acknowledged that the plaintiff told him more than once that he was taking lunch breaks that were too long. Plaintiff's Additional SMF ¶ 95; Defendants' Reply SMF ¶ 95. Lavallee believed that the Honda parts department was run well under the plaintiff's management. *Id*. ¶ 96.

Lavallee testified that Clair disciplined him while he worked at Clair Saco Honda. *Id*. ¶ 97. Lavallee's ex-girlfriend worked at a store in Saco that was part of the Clair Auto Group. *Id*. She obtained a protection order against Lavallee. Plaintiff's Additional SMF ¶ 97; Lavallee

---

[10] The defendants' objections to the second and third sentences of paragraph 94 on hearsay grounds, *see* Defendants' Reply SMF ¶ 94, are overruled. The plaintiff persuasively argues that the statements, made to Fisher by the plaintiff during the course of the plaintiff's employment, including his supervision of Lavallee, qualify as admissions of a party-opponent. *See* Strike Response at 4-5; Fed. R. Evid. 801(d)(2)(D) (a statement is not hearsay if it is "offered against a party" and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship").

[11] To the extent that the defendants object that this statement is not supported by the citation given, *see* Defendants' Reply SMF ¶ 95, the objection is overruled.

Dep. at 16-17.[12]  Clair disciplined Lavallee in connection with this issue.  Plaintiff's Additional SMF ¶ 97; Defendants' Reply SMF ¶ 97.[13]

## B. Perkins Becomes Plaintiff's Supervisor

In October 2005, Fisher separated from his employment with the Clair Auto Group.  *Id*. ¶ 100.  After Fisher departed, Tim Perkins became the plaintiff's direct supervisor.  *Id*.[14]  Fisher talked to Perkins about when the plaintiff might retire, although Fisher does not recall any details of the conversation.  *Id*. ¶ 92.[15]  Perkins denies ever speaking to Fisher about when or if the plaintiff might retire.  *Id*. ¶ 93.  Perkins knew about the protection from harassment order against Lavallee.  *Id*. ¶ 98.[16]

After Fisher's separation from the Clair Auto Group in 2005, Perkins brought Brian Jeffers over to Clair Saco Honda from the Clair VW store and placed him in the position of service manager.  *Id*. ¶ 101.  Jeffers continued to work as service manager at Clair Saco Honda throughout the rest of the plaintiff's employment there.  *Id*. ¶ 102.  During the time that the plaintiff and Jeffers both worked at Clair Saco Honda, Jeffers commonly referred to the plaintiff as an "old geezer."  Plaintiff's Additional SMF ¶ 103; Plaintiff's Supplemental Answers to Defendants' First Set of Interrogatories ("Plaintiff's Suppl. Interrog. Ans.") (Docket No. 46-10),

---

[12] The defendants' objection to this statement on hearsay grounds, *see* Defendants' Reply SMF ¶ 97, is overruled. As the plaintiff points out, *see* Strike Response at 5, the objected-to sentence relays no "statement" made to Lavallee, *see* Plaintiff's Additional SMF ¶ 97.  To the extent that the defendants object that the sentence is unsupported by the citation given, *see* Defendants' Reply SMF ¶ 97, that objection, as well, is overruled, although I modify the statement to reflect more closely the wording in the underlying document.

[13] I omit paragraph 99, sustaining the defendants' objection that the first sentence is unsupported by the citation given.  *See* Defendants' Reply SMF ¶ 99.  The second and third sentences are not meaningful in the absence of the first.  *See* Plaintiff's Additional SMF ¶ 99.

[14] Fisher's first name does not appear in this particular statement, but there is no dispute that it is Tim.  *See, e.g*., Defendants' SMF ¶ 9; Plaintiff's Opposing SMF ¶ 9.

[15] My recitation incorporates, in part, the defendants' qualification.

[16] The defendants qualify this statement, asserting that Perkins spoke directly with the woman involved and knew both sides of the story, learning from her that she did not consider the matter to be as serious as it was portrayed. Defendants' Reply SMF ¶ 98; Deposition of Tim Perkins ("Perkins Dep.") (Docket No. 41) at 112.

attached to Plaintiff's Opposing SMF, ¶ 6.[17] The plaintiff heard Jeffers making these comments, and he found them offensive. Plaintiff's Additional SMF ¶ 103; Declaration of Joseph Donahue, Jr. ("Donahue Decl.") (Docket No. 46-5), attached to Plaintiff's Opposing SMF, ¶ 10.[18] Jeffers called the plaintiff an "old geezer" many times, right up to the time that the defendants terminated the plaintiff's employment. Plaintiff's Additional SMF ¶ 104; Plaintiff's Suppl. Interrog. Ans. ¶ 6; Donahue Dep. at 72-73. A service writer named Jeremy and a service technician named Tom Janelle also called the plaintiff an "old geezer" during the time period that the plaintiff and Jeffers worked together at Clair Saco Honda. Plaintiff's Additional SMF ¶ 105; Plaintiff's Suppl. Interrog. Ans. ¶ 6. According to Perkins, it was a violation of the

---

[17] The defendants' objections to this statement, as well as to others made in paragraphs 103, 104, and 105, on the basis that the plaintiff relies on a supplemental interrogatory answer that contradicts a prior sworn answer to an unambiguous question, without provision of a satisfactory explanation for the change, *see* Defendants' Reply SMF ¶¶ 103-05, are overruled. The defendants rely on the principle that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony changed." *Id.* ¶ 103 (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)). In a September 30, 2009, answer to an interrogatory asking him to "describe all age-based comments to which you refer in your Complaint," the plaintiff responded that he did not refer to any age-based comments in his complaint. Plaintiff's Interrog. Ans. ¶ 6. However, he described three incidents in which various persons asked him when he planned to retire. *See id.* He added, "There may have been other conversations but these are all that I can remember at this time." *Id.* In a supplemental interrogatory answer dated March 1, 2010, he reiterated that he had not referred to any age-based comments in his complaint but described additional incidents in which Jeffers, as well as two other individuals, referred to him as an "old geezer." Plaintiff's Suppl. Interrog. Ans. ¶ 6. When the plaintiff was asked at his deposition why he did not include this information in his answer to the initial interrogatory, he stated: "I don't know why I didn't include it then. I don't know." Deposition of Joseph A. Donahue, Jr. ("Donahue Dep.") (Docket No. 40) at 70-71. As the plaintiff argues, *see* Strike Response at 3-4, his supplemental answer does not clearly contradict an unambiguous question. He was asked about age-based comments referred to in his complaint. In both his initial and supplemental responses, he stated that there were none. While he went on to describe incidents of age-based comments, he did not indicate that these were the entire universe of age-based comments that may have been made to him at work. To the contrary, he stated that there may have been other conversations, but these were all he remembered at that time. Further, as the plaintiff notes, *see id*, two other facts counsel against striking his testimony on the basis of its asserted manufacture to avoid summary judgment: Jeffers testified that the plaintiff was in fact referred to as an "old geezer," Deposition of Brian Jeffers ("Jeffers Dep.") (Docket No. 38-3), attached to Defendants' SMF, at 38, and the plaintiff revised his interrogatory answer on March 1, 2010, prior to the close of discovery on March 5, 2010, and the filing of the defendants' motion for summary judgment on March 26, 2010, *see* Docket Nos. 26, 37; *compare, e.g., Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc.*, 447 F.3d 105, 110 (1st Cir. 2006) (a chronology in which a contradictory statement is executed only after a defendant files a motion for summary judgment is "probative of the fact that the non-movant was merely attempting to create an issue of fact").

[18] I omit the plaintiff's further statement that Jeffers admitted calling him an "old geezer[,]" Plaintiff's Additional SMF ¶ 103, sustaining the defendants' objection that it is not supported by the citation given. While Jeffers testified that the plaintiff was called an "old geezer," he did not admit that he personally called him that. *See* Jeffers Dep. at 38.

defendants' policy against age discrimination for an employee to call another employee an "old geezer." Plaintiff's Additional SMF ¶ 106; Defendants' Reply SMF ¶ 106.[19]

## C. Clair Orders Payroll Reduction in 2006

In 2006, as part of his ongoing assessment of the various dealerships and their profitability, Clair determined that payroll needed to be reduced. Defendants' SMF ¶ 8; Plaintiff's Opposing SMF ¶ 8. He discussed the matter with Perkins, who at the time was the executive manager for all of the Clair auto dealerships in Saco. *Id.* ¶ 9. Clair indicated to Perkins that he wanted him to reduce payroll. *Id.* ¶ 10. Clair asked Perkins to look at every department in every dealership to see where payroll could be cut. *Id.* ¶ 12. Perkins was solely responsible for selecting individuals to be laid off. *Id.* ¶ 13. He reviewed the various departments at the dealerships to see where staff could be reduced. *Id.* ¶ 14. He looked at the employees' current pay and duties and whether their duties could be eliminated. *Id.* ¶ 15. By December 2006, he had selected about 16 people to be laid off. *Id.* ¶¶ 16-17.

Beginning in early 2007, Clair attempted to sell Kia cars at a dealership in Saco. *Id.* ¶ 18. The managers of the Kia Saco dealership were Perkins (sales), Mac MacKensie (service), and Lavallee (parts). *Id.* ¶ 19. Lavallee was moved from the parts department at the Clair Saco Honda to work at the Kia dealership. *Id.* ¶ 20. Prior to working at Clair Saco Honda, Lavallee had worked as parts manager at Clair Buick Cadillac in Saco and at Clair Mazda in Saco. *Id.* ¶ 21. When he was hired to work at the Kia dealership, Lavallee had more than one and a half years' experience working in the parts department of Clair Saco Honda. *Id.* ¶ 22.

---

[19] The defendants qualify this statement, *see* Defendants' Reply SMF ¶ 106, asserting that it is undisputed that Perkins was unaware that anyone referred to the plaintiff as an "old geezer," Perkins Dep. at 120, the plaintiff admits that he never raised this issue with Perkins or any other supervisor, *see* Donahue Dep. at 76, and the plaintiff admits that, while working at Clair Saco Honda, he never indicated to his supervisors that he felt he was being discriminated against on the basis of his age, *see id.* at 78.

The Kia dealership lasted less than three full months. *Id.* ¶ 23. After the Kia products were returned to the manufacturer, Lavallee was moved back to the parts department at Clair Saco Honda. *Id.* ¶ 24. The defendants found positions within the other stores in Saco for all of the employees who worked at the Kia dealership. Plaintiff's Additional SMF ¶ 107; Lavallee Dep. at 36.[20]

### D. Plaintiff Is Laid Off in 2007

At the time the Kia dealership was closed, Perkins was both executive manager of the Clair dealerships in Saco and the general manager of Clair Saco Honda. Defendants' SMF ¶ 25; Plaintiff's Opposing SMF ¶ 25. Perkins had refrained from making a layoff in the parts department of Clair Saco Honda in 2006 because he had a need for a parts manager at the new Kia dealership. *Id.* ¶ 27. Now that the Kia dealership was closed, Perkins was in a position to reduce payroll by laying off either the plaintiff or Lavallee. *Id.* ¶ 28.[21] Perkins decided to retain Lavallee and lay off the plaintiff. *Id.* ¶ 29.[22]

---

[20] The defendants' objection that Lavallee lacks personal knowledge of this matter, *see* Defendants' Reply SMF ¶ 107, is overruled. The plaintiff points out that Lavallee had personal knowledge derived from the fact that he worked at the Kia dealership and continued to work for the defendants after its closure. *See* Strike Response at 5-6; Lavallee Dep. at 22-23, 35-36.

[21] The plaintiff qualifies this statement, asserting that Perkins could have laid off Ryan Thayer, the other employee who worked in the Honda parts department at the time of the plaintiff's termination, and placed Lavallee in his former position under the plaintiff's supervision at Clair Saco Honda. Plaintiff's Opposing SMF ¶ 28; Plaintiff's Interrog. Ans. ¶ 8. He asserts that Perkins also could have laid off Rick Nielsen, the parts manager at the Ford/Mazda store, and replaced him with Lavallee, Nielsen having just begun working for the defendants in January 2007, and Lavallee having had experience working as a Mazda parts manager. *Id.*; Exh. 1 (Docket No. 47) to Declaration of Allan K. Townsend ("Townsend Decl.") (Docket No. 46-1), attached to Plaintiff's Opposing SMF; Lavallee Dep. at 11, 20; *see also* Plaintiff's Additional SMF ¶ 111; Exh. 1 to Townsend Decl. The defendants' objection to paragraph 111 on the ground that the documents on which the plaintiff relies constitute hearsay, and he lays no foundation for a hearsay exception, *see* Defendants' Reply SMF ¶ 111, is overruled. Townsend declares that the documents in question are documents from Nielsen's personnel file, which the defendants produced during the course of discovery. *See* Townsend Decl. ¶ 2. As such, they qualify as admissions of a party-opponent. *See* Fed. R. Evid. 801(d)(2)(A) (a statement is not hearsay if it is "offered against a party" and is "the party's own statement, in either an individual or a representative capacity"); *Anand v. BP West Coast Prods. LLC*, 484 F. Supp.2d 1086, 1092 n.11 (C.D. Cal. 2007) (documents produced in response to discovery requests were authenticated under Federal Rule of Evidence 901(b)(4) and constituted party admissions under Rule 801(d)(2)(A)).

[22] The plaintiff qualifies this statement, asserting that Perkins made this decision with input from Brian Jeffers, the service manager at Clair Saco Honda. Plaintiff's Opposing SMF ¶ 29; Perkins Dep. at 45; Jeffers Dep. at 34.

On May 10, 2007, Perkins informed the plaintiff that he had decided to lay him off. Plaintiff's Additional SMF ¶ 108; Defendants' Reply SMF ¶ 108. He did not explain to the plaintiff why he chose him, as opposed to someone else, for layoff even after the plaintiff requested the reasons for his termination in writing. *Id*.[23] Shortly before Perkins terminated the plaintiff's employment, he asked him when he planned to retire. Plaintiff's Additional SMF ¶ 109; Plaintiff's Interrog. Ans. ¶ 6. The plaintiff told Perkins that he did not have any plans to retire, but that when he decided to do so, he would give plenty of notice so that Perkins could find someone to replace him. *Id*. Perkins denies that he ever asked the plaintiff when he planned to retire. Plaintiff's Additional SMF ¶ 110; Defendants' Reply SMF ¶ 110.

Perkins had heard from the Clair Saco Honda service manager, Brian Jeffers, regarding several issues that he had with the plaintiff. Defendants' SMF ¶ 35; Plaintiff's Opposing SMF ¶ 35. For example, Jeffers discussed with Perkins (i) the service technicians having to line up at the parts department, (ii) pricing conflicts that he had with the plaintiff, and (iii) the plaintiff's reluctance to work together with the service department. *Id*. ¶ 36. Perkins recalled quite a few times when Jeffers came to him with complaints about pricing of parts. *Id*. ¶ 37. With regard to cooperative efforts between the parts and service departments, Jeffers mentioned to Perkins an instance in which the plaintiff did not want to adjust his parts pricing to assist the service department with a sales promotion. *Id*. ¶ 38.[24]

---

[23] The defendants qualify this statement, asserting that Perkins explained that the reason the plaintiff was let go was because of a layoff, and he perceived no need to elaborate. Defendants' Reply SMF ¶ 108; Perkins Dep. at 133-34.

[24] The plaintiff admits that Jeffers told Perkins this, but states that it is not true, and that he never refused to lower prices in connection with a sales promotion. Plaintiff's Opposing SMF ¶ 38; Donahue Decl. ¶ 4.

Jeffers recalls disagreements with the plaintiff about what parts to keep in stock. *Id.* ¶ 41.[25] Jeffers also disagreed with the plaintiff concerning the amounts the parts department was charging the service department for certain parts. *Id.* ¶ 42.[26] Jeffers testified that the typical markup for parts was cost plus 40 percent. *Id.* ¶ 43. Jeffers indicated that the plaintiff did not adhere to that standard. *Id.* ¶ 44.[27]

Jeffers recalls one disagreement in particular involving brake cleaner that cost the parts department about $1.60 or $1.70 per can for which the parts department charged almost $4 per can. *Id.* ¶ 45. This disagreement as to pricing of brake cleaner was presented by the managers to Perkins, who brokered a compromise between them as to what the service department would be charged. *Id.* ¶ 46.[28]

Jeffers also had complaints about how the plaintiff interacted with persons in the service department, including Jeffers himself and one service technician in particular, Tom Janelle. *Id.* ¶ 47. Jeffers discussed with Perkins how even casual conversations between Janelle and the plaintiff would turn into an argument. *Id.* ¶ 48. Jeffers also expressed to Perkins his own frustration working with the plaintiff:

> Q:     And you mentioned there was a meeting you had with Mr. Perkins to discuss issues that you had personally with Mr. Donahue; is that correct?
>
> A:     Correct.

---

[25] The plaintiff qualifies this statement, asserting that these types of disagreements occur all the time between service and parts managers, and Jeffers admitted that he never brought this issue to Perkins' attention. Plaintiff's Opposing SMF ¶ 41; Donahue Dep. at 47-48; Jeffers Dep. at 16.

[26] The plaintiff qualifies this statement, asserting that the only time that anyone made him aware that Jeffers had an alleged problem with his pricing was in connection with his pricing of brake cleaner. Plaintiff's Opposing SMF ¶ 42; Donahue Dep. at 41.

[27] The plaintiff qualifies this statement, asserting that while he and Jeffers worked together, he deviated from the standard 40 percent markup only on brake cleaner. Plaintiff's Opposing SMF ¶ 44; Donahue Dep. at 37-41.

[28] The plaintiff qualifies this statement, asserting that Jeffers admitted that Perkins believed that the plaintiff's position on this issue had some merit. Plaintiff's Opposing SMF ¶ 46; Jeffers Dep. at 21-22.

> Q:     Did that meeting occur before or after the meeting you had to discuss the issues that Mr. Jan[]elle and Mr. Donahue had?
>
> A:     After.
>
> Q:     And what prompted you to go to Mr. Perkins to talk to him about these issues that you had with Mr. Donahue?
>
> A:     Just a frustration level with the department as a whole.
>
> Q:     What was causing your frustration?
>
> A:     The interaction between me and Mr. Donahue, Mr. Donahue and the employees.  It was my opinion at the time that Mr. Donahue purposely would try to get individuals riled up in the shop, including myself, about other things that were happening within the dealership.

*Id*. ¶ 49.  Jeffers actually requested a leave of absence of two weeks because of his frustration over working with the plaintiff, among other things.  *Id*. ¶ 50.[29]  Perkins did not ask Jeffers whom, if anyone, he should lay off.  *Id*. ¶ 51.[30]

The plaintiff admitted that there was an ongoing issue with service technicians disagreeing with him as to what parts to keep in stock.  Defendants' SMF ¶ 53; Donahue Dep. at 34.[31]  The plaintiff also acknowledged at least one instance of a dispute with Jeffers over the amount that he was charging the service department for a part, specifically, for brake cleaner.  Plaintiff's Additional SMF ¶ 54; Defendants' Reply SMF ¶ 54.  The plaintiff admitted that the usual markup on parts was 40 percent.  *Id*. ¶ 55.  He described a disagreement with Jeffers about the fact that he was charging Jeffers' service department more than 40 percent for brake cleaner.

---

[29] The plaintiff qualifies this statement, asserting that Jeffers testified that he took a leave of absence because of his frustration with both the plaintiff and Perkins.  Plaintiff's Opposing SMF ¶ 50; Jeffers Dep. at 32-33.

[30] The plaintiff qualifies this statement, asserting that, during the period of time that Lavallee was working at the Kia store, Jeffers told Perkins he should replace the plaintiff with Lavallee.  Plaintiff's Opposing SMF ¶ 51; Jeffers Dep. at 34.

[31] The plaintiff purports to deny this statement, Plaintiff's Opposing SMF ¶ 53, but does not controvert it.  He denies that he admitted that this was an "issue," pointing out that he elsewhere testified simply that it is common for service technicians to disagree with parts managers about which parts to stock, which Jeffers and Lavallee confirmed.  *Id*.; Donahue Dep. at 47-48; Jeffers Dep. at 14-15; Lavallee Dep. at 23-24.  Yet, the portion of his testimony cited by the defendants fairly can be read to support the proposition for which it was cited.  *See* Donahue Dep. at 34.

*Id*. ¶ 56. He also acknowledged that he had a disagreement with Jeffers over a sales promotion, specifically concerning the monetary contribution of the parts department to the promotion materials. *Id*. ¶ 57.[32]

The plaintiff also described an ongoing conflict with Janelle, a shop foreman at Clair Saco Honda who assisted the service technicians. *Id*. ¶ 58.[33] He objected to Janelle's criticisms and believed that he was attempting to run the parts department. *Id*. ¶ 59.

Perkins claims that he did not consider laying off Nielsen and replacing him with Lavallee because Lavallee had more Honda experience than anything else. Plaintiff's Additional SMF ¶ 112; Defendants' Reply SMF ¶ 112. However, Lavallee worked as Mazda parts manager for five years and only worked at Clair Saco Honda for less than two years before the plaintiff's termination. *Id*.[34]

Perkins claims that because of the plaintiff's alleged performance problems, he did not consider laying off Ryan Thayer, an employee who worked at the parts counter at Clair Saco Honda, and moving the plaintiff into a counterperson position. Plaintiff's Additional SMF ¶ 113; Defendants' Reply SMF ¶ 113. Perkins claims that he wanted the plaintiff out of Clair Saco Honda so that he could have a fresh start. *Id*.; *see also* Defendants' SMF ¶¶ 31-32, 40. He

---

[32] The plaintiff qualifies this statement, asserting that he had no problem with that monetary contribution so long as he could have input into what went on in the promotional flyers. Plaintiff's Opposing SMF ¶ 57; Donahue Dep. at 42-43; Donahue Decl. ¶ 6. After a meeting with Perkins and Jeffers, he was permitted to have such input, and Perkins at no time suggested that he had been unreasonable in his position. *Id*.

[33] The plaintiff qualifies this statement, asserting that Janelle was the cause of the conflict and had conflicts with many others who worked for the defendants. Plaintiff's Opposing SMF ¶ 58; Donahue Dep. at 43-45, Jeffers Dep. at 27.

[34] The defendants qualify this statement, asserting that Lavallee had at most three months' exposure to Ford parts and therefore did not have more experience in the combined Ford/Mazda parts department than he did in the Honda parts department. Defendants' Reply SMF ¶ 112; Lavallee Dep. at 13-14, 19. I omit the third and fourth sentences of paragraph 112, sustaining the defendants' objection that the citations given fail to demonstrate that Perkins had personal knowledge of Lavallee's work history. Defendants' Reply SMF ¶ 112; *see also* Perkins Dep. at 7-8; Lavallee Dep. at 11, 20.

claims that he did not have any confidence that the plaintiff would adequately assist the technicians if he were to remain in the department as a counterperson. *Id.*

## E. Explanation to MHRC

The plaintiff filed a Charge of Discrimination with the Maine Human Rights Commission ("MHRC") on June 25, 2007. Plaintiff's Additional SMF ¶ 114; Defendants' Reply SMF ¶ 114. The defendants submitted their position to the MHRC in response to that charge. *Id.* ¶ 115. During the MHRC investigation, they obtained information from Perkins about the reasons for the plaintiff's termination. *Id.*[35] In a statement to the MHRC, the defendants said:

> [W]e would like to emphasize that we are not suggesting that Mr. Donahue was not generally a good worker or a capable parts department manager. He was both. However, [Mr. Lavallee] also had these qualities. Clair Saco Honda was faced with the unenviable position of having two qualified workers for one available position. Regardless of which person was chosen for dismissal, he would not think the action was justified. Clair Saco Honda, through [Perkins], attempted to make a decision based upon the relative comments of persons who worked closely with the parts department.

*Id.* ¶ 116.[36] The plaintiff's counsel asked Perkins, at his deposition, if he considered the plaintiff to be "generally a good worker." *Id.* ¶ 117. Perkins said "no." *Id.*

The defendants represented to the MHRC that seniority was a factor that they considered when they decided to terminate the plaintiff and replace him with Lavallee. *Id.* ¶ 118.[37] Perkins

---

[35] The defendants qualify this statement, asserting that while Perkins may have participated in the response to the MHRC that was mailed on September 6, 2007, Clair Saco Honda had limited access to and sporadic contact with Perkins after November 2007, when the assets of the Clair dealerships in Saco were sold. Defendants' Reply SMF ¶ 115; Perkins Dep. at 96, 128-30; Deposition of Michael S. Clair ("Clair Dep. I") (Docket No. 39) at 8; Exh. 3 (Docket No. 46-3) to Townsend Decl. They state that when the MHRC investigator sought additional information from Perkins, over a year had passed since Perkins had been employed at Clair Saco Honda, and by then Perkins had relocated to Florida. *Id.*

[36] The defendants qualify this statement, asserting that the plaintiff neglected to quote portions of their response to the MHRC in which they made clear that the layoff occurred because of Perkins' assessment of who would better move the parts department forward and that age was not a factor in the decision. Defendants' Reply SMF ¶ 116; Exh. 2 (Docket No. 46-2) to Townsend Decl.

[37] The defendants qualify this statement, asserting that Clair Saco Honda did note that Lavallee had slightly more seniority than the plaintiff when they decided to lay the plaintiff off. Defendants' Reply SMF ¶ 118; Exh. 2 to Townsend Decl.

did not say anything about seniority in his explanation for his decision in his declaration.  *Id.* ¶ 119.  The defendants represented to the MHRC that Perkins based his decision to terminate the plaintiff on input he received from Jeffers.  *Id.* ¶ 120.  Perkins also testified at his deposition that he factored Jeffers' and Janelle's input into his decision to terminate the plaintiff.  *Id.*

Jeffers testified that he brought up the idea of replacing the plaintiff with Lavallee during a meeting that he had with Perkins.  *Id.* ¶ 121.  He told Perkins that he thought Lavallee would manage the parts department better than the plaintiff.  *Id.*  This meeting occurred while Lavallee was working at the Kia store.  *Id.*[38]

### F.  Perkins' Current Claims; Plaintiff's Denial of Them

Perkins claimed at his deposition that he thought about terminating the plaintiff for alleged performance issues even before the Kia store closed.  *Id.* ¶ 122.  Perkins claimed at his deposition that he gave the plaintiff multiple verbal warnings about his performance.  *Id.* ¶ 123; *see also* Defendants' SMF ¶ 39.  According to the plaintiff, Perkins never disciplined him, reprimanded him, or gave him any sort of verbal or written warning.  Plaintiff's Additional SMF ¶ 124; Donahue Decl. ¶ 13.

According to the defendants' policies, managers were supposed to document verbal warnings.  Plaintiff's Additional SMF ¶ 125; Defendants' Reply SMF ¶ 125.[39]  There were no documented verbal warnings in the plaintiff's personnel file.  *Id.*  There was no documented

---

[38] The defendants qualify paragraph 121, asserting that Perkins does not recall any such conversation, and Perkins made the layoff decision on his own.  Defendants' Reply SMF ¶ 121; Perkins Dep. at 98.

[39] The defendants qualify this statement, asserting that Perkins testified that there was no bright line rule as to what should be documented and that managers had the discretion to judge the severity of the issues for themselves. Defendants' Reply SMF ¶ 125; Perkins Dep. at 19.

discipline of any kind in his personnel file.  *Id*.  When asked why he did not document the warnings he gave to the plaintiff, Perkins said he did not know.  *Id*.[40]

Perkins claims that he spoke to the plaintiff multiple times about (i) the plaintiff's alleged failure to assist service technicians at the parts counter, (ii) his alleged inappropriate markup of the prices of parts, and (iii) his unwillingness to work cooperatively with the service department.  *Id*. ¶ 126; *see also* Defendants' SMF ¶¶ 33-34.  Perkins claims that Jeffers expressed concerns with the plaintiff in these three areas as well.  Plaintiff's Additional SMF ¶ 127; Defendants' Reply SMF ¶ 127.

Perkins claims that he spoke to the plaintiff multiple times about Perkins' alleged belief that the plaintiff did not adequately attend to service technicians waiting at the parts counter.  *Id*. ¶ 128.  He claims that the plaintiff would sometimes remain in his office and let service technicians wait at the parts counter.  *Id*.  He claims that this was an ongoing problem that he first noticed in the first quarter of 2006, which continued until he terminated the plaintiff.  *Id*.

The plaintiff denies that Perkins ever told him that he (Perkins) thought the plaintiff allowed service technicians to wait too long at the parts counter.  Plaintiff's Additional SMF ¶ 129; Donahue Dep. at 49-50; Donahue Decl. ¶ 2.  Perkins never told the plaintiff that he thought the plaintiff was in his office when he should be assisting service technicians at the parts counter.  *Id*.

According to Perkins, Jeffers told him that the plaintiff would talk on the phone in his office while service technicians waited for assistance at the parts counter.  Plaintiff's Additional

---

[40] The defendants qualify this statement, asserting, in part, that Perkins testified that he did not document the warnings because he was dealing with the plaintiff verbally.  Defendants' Reply SMF ¶ 125; Perkins Dep. at 24-25.

SMF ¶ 130; Defendants' Reply SMF ¶ 130.[41]  Perkins claims that the plaintiff could not have been on the phone with customers while service technicians waited at the parts counter because he never had occasion to speak to customers on the phone.  *Id*. ¶ 131.  The plaintiff did in fact speak to customers on the phone.  *Id*. ¶ 132.  Jeffers and Janelle also told Perkins that the plaintiff would sit in his office while service technicians waited at the parts counter, even if he was not on the phone.  *Id*. ¶ 133.  Perkins testified that he was unaware of this until Jeffers and Janelle told him about it.  *Id*.

The plaintiff denies that he ever stayed in his office and let service technicians wait at the parts counter if he was not on the phone.  Plaintiff's Additional SMF ¶ 134; Donahue Decl. ¶ 2.  The only time he let a service technician wait at the counter was when he had to assist a customer on the phone.  *Id*.  Service technicians infrequently had to wait at the counter while he was on the phone with a customer.  *Id*.[42]

Perkins also claims that the phone rang in the parts department without anyone answering it.  Plaintiff's Additional SMF ¶ 135; Defendants' Reply SMF ¶ 135.  He claims that he spoke to the plaintiff about this issue.  *Id*.  He claims that this was an ongoing problem that he first noticed in the first quarter of 2006 and that it continued until he terminated the plaintiff's employment.  *Id*.  The plaintiff denies that Perkins ever spoke to him about the phone ringing without anyone answering it.  Plaintiff's Additional SMF ¶ 136; Donahue Decl. ¶ 5.

Perkins also claims that he spoke to the plaintiff multiple times about his alleged inappropriate markup of different parts.  Plaintiff's Additional SMF ¶ 137; Defendants' Reply

---

[41] I omit the plaintiff's reference to Janelle, Plaintiff's Additional SMF ¶ 130, sustaining the defendants' objection, Defendants' Reply SMF ¶ 130, that the cited references do not specifically indicate what statements may have been made by Janelle.

[42] I omit the third sentence of paragraph 134, Plaintiff's Additional SMF ¶ 134, which is neither admitted nor supported by the citation given.

SMF ¶ 137. He claims that Jeffers complained to him on multiple occasions about the plaintiff's alleged inappropriate markup of parts. *Id*. The plaintiff denies that Perkins spoke to him multiple times about inappropriate markup of different parts. Plaintiff's Additional SMF ¶ 138; Donahue Dep. at 40-41, 48-49. The plaintiff and Jeffers met with Perkins regarding the markup of one part, brake cleaner. Plaintiff's Additional SMF ¶ 138; Defendants' Reply SMF ¶ 138. Perkins did not indicate that the plaintiff had done anything inappropriate in marking up the price for brake cleaner. *Id*.[43] At the meeting, Perkins listened to the plaintiff's explanation for the markup and Jeffers' concerns. *Id*. He indicated that both had valid points, and then he set a price for the brake cleaner. *Id*.

Perkins claims that the plaintiff was unwilling to work cooperatively with the service department. *Id*. ¶ 139. He testified that Jeffers brought this issue to his attention. *Id*.[44] Specifically, he testified that the plaintiff had "no willingness" to work with the service department in connection with advertising and marketing. *Id*.

The plaintiff was willing to work with the service department in connection with advertising and marketing. Plaintiff's Additional SMF ¶ 140; Donahue Decl. ¶ 6. The only time that Perkins spoke to the plaintiff about a problem concerning marketing and advertising activities was in connection with a concern the plaintiff had with the way advertising fliers were created and paid for. *Id*. The parts department was expected to pay for part of the cost of the advertising fliers, but the plaintiff did not get to offer any input on what he thought should go into them. *Id*. At a meeting with Perkins and Jeffers, he told Perkins that he wanted to have

---

[43] The defendants qualify this statement, asserting, insofar as their qualification is supported by the citation given, that the plaintiff conceded that the markup exceeded the standard. Defendants' Reply SMF ¶ 138; Donahue Dep. at 39-40.

[44] The defendants qualify this statement, asserting that Perkins also had his own observations as to the plaintiff's lack of cooperation with the service department. Defendants' Reply SMF ¶ 139; Perkins Dep. at 14-15, 57-60. However, the materials cited do not bear on cooperation in connection with advertising and marketing. *See* Perkins Dep. at 14-15, 57-60.

input into what went into the fliers.  *Id*.  Perkins agreed, and afterward the plaintiff was permitted to have such input.  *Id*.  Neither during that meeting nor at any other time did Perkins tell the plaintiff that he thought he was being uncooperative with the service department in connection with advertising and marketing activities.  *Id*.

Perkins claims that Jeffers told him that the plaintiff refused to lower prices on some parts so that the service department could run a promotion.  Plaintiff's Additional SMF ¶ 141; Defendants' Reply SMF ¶ 141.  Perkins claims that he had to tell the plaintiff to lower the prices for the promotional sale and, when he did, the plaintiff angrily swore at him under his breath.  *Id*. The plaintiff denies ever swearing at Perkins, under his breath or otherwise.  Plaintiff's Additional SMF ¶ 142; Donahue Decl. ¶ 4.  Furthermore, the plaintiff never refused to lower the prices of parts for a promotional sale, and Perkins never had to tell him to do so.  *Id*.  Perkins also never told the plaintiff that anyone had accused him of refusing to lower the prices of parts for a promotional sale.  *Id*.

Jeffers reported to Perkins that he believed that the plaintiff purposely tried to rile him up and did the same to other employees in the service department.  Plaintiff's Additional SMF ¶ 143; Defendants' Reply SMF ¶ 143.  No one ever told the plaintiff that Jeffers thought that he was trying to rile him up or rile anyone else up.  Plaintiff's Additional SMF ¶ 144; Donahue Decl. ¶ 14.[45]  The plaintiff did not do anything to purposely rile up Janelle.  *Id*.[46]  Jeffers and Perkins both agreed that Janelle acted inappropriately in expressing his opinions to the plaintiff.

---

[45] The defendants purport to qualify this statement, asserting that Perkins noted a weekly conflict between Jeffers and the plaintiff and spoke to the plaintiff about a number of the conflicts.  Defendants' Reply SMF ¶ 144. However, the qualification is in essence a denial, and I construe the evidence in the light most favorable to the plaintiff as nonmovant.

[46] The defendants' objection that this sentence lacks foundation because the plaintiff testifies as to others' thought processes, Defendants' Reply SMF ¶ 144, is overruled.  The plaintiff testifies as to his own thought processes. However, a similar objection lodged as to the first, third, fifth, and seventh sentences of paragraph 144, *id*., is sustained.  In those sentences, the plaintiff does indeed speculate as to others' state of mind.

Plaintiff's Additional SMF ¶ 144; Jeffers Dep. at 26-27.[47]  To the plaintiff's knowledge, before Perkins and Jeffers began working at Clair Saco Honda, no manager had concerns about the way in which he managed the parts department.  Plaintiff's Additional SMF ¶ 145; Donahue Decl. ¶ 15.[48]

Following the termination of his employment, the plaintiff asked for a written explanation of the reasons for it.  Plaintiff's Additional SMF ¶ 146; Defendants' Reply SMF ¶ 146.  Perkins provided him with a letter that did not identify any of the alleged performance problems that Perkins claims motivated his decision to choose Lavallee over the plaintiff for the parts manager position at Clair Saco Honda.  *Id*.  Perkins claims that he did not identify any of the alleged performance issues when he wrote the letter because he decided to classify the termination as a "layoff."  *Id*.[49]

The manager of the Clair collision center, Alan Hebb, thought that the plaintiff ran the parts department at Clair Saco Honda well.  *Id*. ¶ 147.  Hebb was the manager of the collision center during the entire time that Perkins served as the plaintiff's immediate supervisor.  *Id*.

---

[47] The defendants qualify this statement, asserting that Jeffers stated that he would have preferred that Janelle air his complaints about the plaintiff to him rather than directly to the plaintiff.  Defendants' Reply SMF ¶ 144; Jeffers Dep. at 27.

[48] The defendants' objection to this statement on the basis that the plaintiff lacks personal knowledge as to others' thought processes, Defendants' Reply SMF ¶ 145, is overruled.  I have reworded the sentence to clarify, as explained by the plaintiff, *see* Strike Response at 7, that he testifies only as to his own awareness of concerns expressed by managers.

[49] The defendants qualify this paragraph, asserting that while the letter did not reference performance issues, Perkins reiterated what he told the plaintiff personally, that he was laid off as a cost-saving measure.  Defendants' Reply SMF ¶ 146; Exh. 8 to Perkins Dep. (Docket No. 46-15), attached to Plaintiff's Opposing SMF.  They add that Clair Saco Honda's response to the request for information from the MHRC reiterates that the plaintiff was laid off as a cost-saving measure and goes on to indicate that Perkins' assessment of who would be the better person to move the parts department forward, and Lavallee's slightly greater seniority, were both factors.  Defendants' Reply SMF ¶ 146; Exh. 4 (Docket No. 46-4) to Townsend Decl., at 2.  When pressed by the MHRC to provide more detail, Clair Saco Honda did so, to the extent that it had access to Perkins, who had by then moved out of state, while continuing to emphasize that the action was a layoff prompted by financial considerations.  Defendants' Reply SMF ¶ 146; Exh. 3 to Townsend Decl.  When Perkins was deposed, he reiterated that the plaintiff was laid off as a cost-saving measure and that he looked to what the various employees were being paid, what their duties were, and whether their duties could be eliminated.  Defendants' Reply SMF ¶ 146; Perkins Dep. at 109.

Hebb and the plaintiff had to work together on projects when the collision center needed parts to repair a Honda. *Id.* They worked together frequently, on at least a weekly basis. *Id.*[50]

The sales manager at Clair Saco Honda, Mark Andrews, thought the plaintiff ran the parts department there well. *Id.* ¶ 148. He thought the plaintiff had a "work ethic second to none" and "performed his duties with the utmost professionalism." *Id.* He was the sales manager at Clair Saco Honda from 2004 to 2007. *Id.* He and the plaintiff worked together frequently, on at least a weekly basis. *Id.*[51]

The used car manager for Clair, Tim Hooper, thought the plaintiff was a "very capable parts manager." *Id.* ¶ 149. He and the plaintiff worked together frequently, on at least a weekly basis. *Id.*[52]

## G. Retirement Inquiries; "Old Geezer" Appellation

The plaintiff alleges that about a month before he was laid off, Perkins asked him when he planned to retire. Defendants' SMF ¶ 60; Plaintiff's Opposing SMF ¶ 60. Perkins denies ever discussing retirement with the plaintiff. *Id.* ¶ 61. The plaintiff alleges only one conversation in which the issue of retirement was discussed with Perkins. *Id.* ¶ 62.[53] The plaintiff acknowledges that there is nothing inherently objectionable about talking about the issue of retirement at work. *Id.* ¶ 63. The plaintiff also admits that he did not feel the subject of his retirement was something that was off limits at work. *Id.* ¶ 64.

---

[50] The defendants qualify this paragraph, asserting that Hebb was not resident at the Honda dealership and was not consulted about whether to retain the plaintiff or Lavallee. Defendants' Reply SMF ¶ 147; Perkins Dep. at 101-02.

[51] The defendants qualify this paragraph, asserting that Andrews was not consulted about whether to retain the plaintiff or Lavallee. Defendants' Reply SMF ¶ 148; Perkins Dep. at 101.

[52] The defendants qualify this paragraph, asserting, insofar as the qualification is supported by the citation given, that Hooper was not consulted about whether to retain the plaintiff or Lavallee. Defendants' Reply SMF ¶ 149; Perkins Dep. at 101.

[53] The plaintiff qualifies this statement, asserting that he can remember only one conversation he had with Perkins about retirement, but there could have been more. Plaintiff's Opposing SMF ¶ 62; Donahue Dep. at 61-62. He adds that Fisher testified that he spoke to Perkins about the plaintiff and retirement. Plaintiff's Opposing SMF ¶ 62; Fisher Dep. at 26.

The plaintiff also alleges that he discussed the issue of his retirement with his former boss, Paul Fisher. *Id*. ¶ 65. He suggests that, on a couple of occasions in 2006, Fisher asked him about his retirement plans. *Id*. ¶ 66. Fisher ended his employment at Clair Saco Honda in October 2005. *Id*. ¶ 67. The plaintiff also alleges that Jeffers and service technicians referred to him as an "old geezer." *Id*. ¶ 70. Perkins was not aware of anyone calling the plaintiff an "old geezer." *Id*. ¶ 71. The plaintiff does not allege that Perkins ever called him an "old geezer" or that Perkins was present when this phrase was spoken. *Id*. ¶ 72. The plaintiff did not report this alleged conduct to Perkins or to any other supervisor. *Id*. ¶ 73. The plaintiff never asked Perkins or any supervisor to intercede on his behalf to end this alleged conduct. *Id*. ¶ 74.

The plaintiff acknowledges that no one at Clair Saco Honda has stated that he was laid off because of his age. *Id*. ¶ 75. The plaintiff further acknowledges that no one at Clair Saco Honda told him that he was laid off because he was too old to do the job. *Id*. ¶ 76. The plaintiff admits that he is not aware of anything in writing indicating that the defendants laid him off because of his age. *Id*. ¶ 77.

## H. Interrelationship of Clair Companies

Clair, along with his brothers, owned all three of the defendants from 2004 to November 2007, when the dealerships were sold to Prime Auto Group. Plaintiff's Additional SMF ¶ 150; Defendants' Reply SMF ¶ 150. Clair Saco Honda, Clair Ford, and Clair VW were all part of the "Clair Automotive Group." *Id*. ¶ 151.[54] Perkins was the executive manager, and Clair was the dealer. *Id*. ¶ 152.[55] Perkins' title was "Executive Manager Clair Auto Group." *Id*. ¶ 153.[56]

---

[54] The defendants qualify this statement, asserting, *inter alia*, that although the term "Clair Automotive Group" was used to describe the Clair dealerships located in Saco, each dealership was a separate entity acquired at various times. Defendants' Reply SMF ¶ 151; Clair Dep. I at 8-9.

[55] I omit the first sentence of paragraph 152, which is unsupported by any citation.

[56] The defendants qualify this statement, asserting that Perkins acted as executive manager of Clair Auto Group as well as general manager of Clair Saco Honda. Defendants' Reply SMF ¶ 153; Perkins Decl. ¶¶ 2-3.

Perkins looked at all of the defendants when he made decisions about layoffs in December 2006. *Id.* ¶ 154. All of the employees of the defendants worked either directly or indirectly for Perkins. *Id.*[57] The defendants had a central office at the Ford store with employees who performed functions such as payroll and human resources for all of the defendants. Plaintiff's Additional SMF ¶ 155; Clair Dep. II at 90; Donahue Decl. ¶ 1.[58] While the plaintiff worked for Clair Saco Honda, managers of the different departments from the three defendants would have regularly scheduled meetings to discuss the business. Plaintiff's Additional SMF ¶ 156; Defendants' Reply SMF ¶ 156.[59] They would meet to speak about issues such as finance, marketing, and how they could assist one another. *Id.*

### III. Discussion

### A. Summary of Parties' Positions

The plaintiff alleges that the defendants terminated his employment because of his age, in violation of both the ADEA and the MHRA. *See* Complaint ¶¶ 12-21. The defendants seek summary judgment with respect to Clair VW and Clair Ford on the ground that neither entity ever employed the plaintiff and, hence, neither is appropriately named a defendant. *See* Motion at 10-11. The plaintiff counters that, while he performed no work for Clair VW or Clair Ford, they formed part of an "integrated enterprise" and can be held liable on that account. *See*

---

[57] I omit the first sentence of paragraph 154, which is unsupported by any citation. The plaintiff argues that the sentence should not be stricken because it is supported by citations given elsewhere in the paragraph, and Local Rule 56 does not require a record citation after each sentence. *See* Strike Response at 7. The plaintiff is mistaken. Local Rule 56 requires that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Loc. R. 56(f). Separate sentences within multi-sentence statements of fact qualify, in my view, as separate "assertion[s] of fact[.]"

[58] The defendants' objection to this statement on grounds that, in part, the cited record materials do not support the assertion and, in part, the cited materials do not establish a foundation for the statement, Defendants' Reply SMF ¶ 155, is overruled. The cited portions of the Clair deposition and the Donahue declaration, together, support the assertion. Clair's status as the dealer for the dealerships and the plaintiff's status as a longtime manager at one of the dealerships provide adequate foundation for their knowledge of the manner in which payroll and human resources were handled.

[59] My recitation incorporates the defendants' qualification.

Plaintiff's Response to Defendants' Motion for Summary Judgment ("Response") (Docket No. 45) at 15-17. The defendants deny that the "integrated enterprise" theory of liability applies or that, if it does, there is a basis for liability as to Clair VW or Clair Ford. *See* Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment ("Reply") (Docket 55) at 1-3.

The defendants also seek summary judgment on the merits as to all claims against them on grounds that:

1. The plaintiff offers no direct evidence of age discrimination and, accordingly, must make his case pursuant to the burden-shifting paradigm laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* Motion at 13.

2. Assuming *arguendo* that the plaintiff makes out a *prima facie* case of age discrimination, the defendants handily meet their burden of proving legitimate, non-discriminatory reasons for his layoff, namely the business decision to cut costs, coupled with the business judgment that Lavallee, rather than the plaintiff, was the better person to move the parts department forward. *See id*. at 15-16.

3. The plaintiff cannot prove that these legitimate reasons were pretextual – that is, that they had no basis in fact. *See id*. at 16-18. In any event, regardless of whether he makes a showing of pretext, he adduces insufficient evidence to raise a triable issue as to the ultimate question: whether he was terminated because of his age. *See id*. at 18.

The plaintiff does not dispute that the *McDonnell Douglas* burden-shifting paradigm applies or that the defendants meet their burden of articulating legitimate, non-discriminatory reasons for his employment termination. *See* Response at 3-4. However, he argues that he

makes a strong showing that these reasons were pretextual and raises a triable issue that he was terminated on account of his age. *See id*. at 4-5.

## B. "Integrated Enterprise" Theory of Liability

The plaintiff seeks to hold Clair VW and Clair Ford liable for age discrimination pursuant to the "integrated enterprise" theory of liability set forth in *Romano v. U-Haul Int'l*, 233 F.3d 655 (1st Cir. 2000), which he notes has been applied to claims brought pursuant to the MHRA as well as the ADEA. *See id.* at 15-17. "Under the 'single employer' or 'integrated enterprise' doctrine, two companies may be considered so interrelated that they constitute a single employer subject to liability under the ADEA[.]" *Torres-Negrón v. Merck & Co.*, 488 F.3d 34, 43 (1st Cir. 2007) (citation and internal quotation marks omitted).

Application of the integrated enterprise theory entails consideration of four factors bearing on the relationship between a plaintiff's titular employer and the nominally separate company sought to be held liable: interrelation of operations, common management, centralized control of labor relations, and common ownership. *See Romano*, 233 F.3d at 666. Of these factors, "control of employment decisions is a primary consideration in evaluating employer status." *Id*. Nonetheless, focus on employment decisions is appropriate "only to the extent that the parent exerts an amount of participation that is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Id*. (citation and internal punctuation omitted). "As for sales, marketing and advertising, these factors may be considered under the interrelation of operations prong, but only insofar as the parent is involved directly in the subsidiary's daily decisions." *Id*. at 667 (citation and internal punctuation marks omitted).

The plaintiff posits that he meets all four integrated enterprise factors, showing (i) common ownership, all three defendants having been owned by Clair and his brothers, (ii) common management, Clair and Perkins having managed all three dealerships, (iii) centralized control of labor relations, Perkins having made personnel decisions for all of the defendants and having looked at all of the defendants in making layoff decisions in December 2006, and the defendants having had a central office that performed such functions as payroll and human resources for all three, and (iv) interrelation of operations, the defendants having transferred employees from one defendant to another, and managers of all three defendants having met to discuss business. *See* Response at 16-17.

The defendants counter that, despite the plaintiff's evidence of centralized management and control of the three entities, he falls short of demonstrating that either Clair VW or Clair Ford *itself* played any active role in his employment or termination of employment or was in any way involved in the alleged discriminatory actions. *See* Reply at 1-2. They reason that even if it is true that Perkins acted as the executive manager for all of the Clair dealerships in Saco, his ability to make decisions affecting the other dealerships does not, on this record, have any relationship to the plaintiff's allegations of discrimination. *See id*. at 2.

The defendants' argument is persuasive. The First Circuit contemplates active participation in the employment process by an entity sought to be held liable under an integrated enterprise theory. *Romano*, 233 F.3d at 666; *see also, e.g., Phair v. New Page Corp*., __ F. Supp.2d __, No. 09-cv-97-P-S, 2010 WL 1529398, at *9-*10 (D. Me. Apr. 15, 2010) (jury question existed as to whether parent company was an integrated employer with subsidiary when, *inter alia*, parent employed salespeople on subsidiary's behalf, parent told subsidiary which products to make, and, as to labor relations, (i) the majority of the subsidiary's personnel

policies were provided by the parent, (ii) the subsidiary's human resources director regularly consulted with the parent's corporate human resources department, and (iii) personnel commonly transferred between the parent and the subsidiary).

While it is true that the entities sought to be held liable in *Romano* and *Phair* were parent corporations, I perceive no reason why a company's status as a sister corporation should relieve a plaintiff of the need to demonstrate that it played this sort of role. There is no evidence that either Clair VW or Clair Ford played any role in labor relations decisions at Clair Saco Honda or that Clair or Perkins acted on behalf of Clair VW or Clair Ford in making decisions affecting Clair Saco Honda.

Clair VW and Clair Ford accordingly are entitled to summary judgment as to all counts against them.

### C. Merits: Age Discrimination

### 1. Applicable Legal Standards

"The ADEA makes it illegal for an employer 'to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Suarez v. Pueblo Int'l, Inc*., 229 F.3d 49, 53 (1st Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)). In similar fashion, the MHRA makes it illegal, in relevant part, for any employer to discharge an employee "because of" age. 5 M.R.S.A. § 4572(1)(A).

The defendants suggest, and the plaintiff agrees, that ADEA analysis is dispositive of his MHRA age discrimination claim. *See* Motion at 11-12; Response at 3; *see also, e.g., Phair*, 2010 WL 1529398, at *10 n.4 ("Maine courts apply the MHRA in accordance with federal anti-

discrimination law, including the ADEA. Thus, the Court's analysis pertains to both the federal and state claims.") (citations omitted).

To prove an ADEA violation, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009). "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id.* at 2349.

"Direct evidence . . . consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision[.]" *Patten v. Wal-Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir. 2002) (citation and internal quotation marks omitted). "The high threshold for this type of evidence requires that mere background noise and stray remarks be excluded from its definition." *Id.* (citations and internal quotation marks omitted). "A statement that can plausibly be interpreted two different ways – one discriminatory and the other benign – does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Id.* (citation and internal quotation marks omitted).

"Where, as here, an employee lacks direct evidence that the employer's actions were motivated by age animus, the *McDonnell Douglas* burden-shifting framework dictates the progression of proof." *Suarez*, 229 F.3d at 53.

"The first step in this progression involves the employee's prima facie case." *Id.* "To climb this step, an employee suing under the ADEA for termination of employment must adduce evidence which, if believed, suffices to prove four facts: (1) that he was at least forty years old when he and his employer parted company; (2) that his job performance met the employer's legitimate expectations; (3) that he lost his position through an adverse employment action

attributable to the employer (typically, a firing); and (4) that the employer had a continuing need for the services that he had been rendering." *Id.*

Once a plaintiff establishes a *prima facie* case, the *McDonnell Douglas* rubric shifts the burden to the defendant to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citation and internal quotation marks omitted). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Id.* (citation and internal quotation marks omitted).

Once the defendant meets this burden, "the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Id.* at 142-43 (citations and internal quotation marks omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 143 (citation and internal quotation marks omitted). In attempting to satisfy this burden, a plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citations and internal quotation marks omitted).

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. *See also, e.g., Domínguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 430-31 (1st Cir. 2000) (once plaintiff makes out *prima facie* case and defendant meets its burden of production, "the focus [at summary judgment] should be on the

ultimate issue: whether, viewing the aggregate package of proof offered by the plaintiff and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact as to whether the termination of the plaintiff's employment was motivated by age discrimination.") (citations and quotation marks omitted).

The defendants do not contend that the plaintiff has failed to make out a *prima facie* case of age discrimination, *see* Motion at 15, and the plaintiff does not argue that the defendants have failed to carry their burden of evidencing a legitimate, non-discriminatory reason for his layoff, *see* Response at 3-4. The parties instead sharply dispute whether the plaintiff has adduced sufficient evidence, including but not limited to a showing that the defendants' explanation is pretextual, to generate a triable issue as to whether age was the "but-for" cause of his layoff. *See* Motion at 15-18; Response at 4-15; Reply at 3-13.

## 2. Plaintiff's Showing of Pretext

The defendants articulate the following reasons for the plaintiff's layoff: that it was undertaken as a cost-saving measure, and that the primary criterion for the choice between the plaintiff and Lavallee was who would work best with the service department going forward. *See* Motion at 10. They deny that age played any role whatsoever in the decision, let alone a "but-for" role. *See id.* They emphasize that "pursuant to the 'business judgment' rule an employer is free to terminate an employee for any nondiscriminatory reason, even if its business judgment seems objectively unwise" and that courts "may not sit as super personnel departments assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions." *Id.* at 16 (quoting *Webber v. International Paper Co.*, 417 F.3d 229, 238 (1st Cir. 2005); *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 537 (1st Cir. 1996)).

The defendants are correct that the plaintiff falls short of showing that their cost-cutting rationale was pretextual. It is undisputed that in 2006, Clair, the dealer for all of the Clair Saco dealerships, directed Perkins to reduce staff as a cost-cutting measure, and that by December 2006 Perkins had identified 16 people for layoff. *See* Defendants' SMF ¶¶ 3-4, 8-17; Plaintiff's Opposing SMF ¶¶ 3-4, 8-17. Perkins did not seek to lay off either the plaintiff or Lavallee at that time because Lavallee had been moved to the new Kia dealership. *See id.* ¶ 27. When that dealership folded, Perkins saw a further opportunity to reduce staffing. *See id.* ¶ 28.

Nonetheless, the plaintiff adduces sufficient evidence to raise a triable issue as to whether the stated reason for the choice to target himself rather than Lavallee for layoff – that Lavallee would work better with the parts department moving forward – was pretextual.

The plaintiff adduces evidence that the defendants represented to the MHRC that the plaintiff was generally a good worker and a capable parts department manager, that Lavallee also had those qualities, that the defendants were in the unenviable position of having to choose between two qualified workers for one available position, and that Clair Saco Honda, through Perkins, attempted to make a decision based on the relative comments of persons who worked closely with the parts department. *See* Plaintiff's Additional SMF ¶ 116; Defendants' Reply SMF ¶ 116.

Yet, this explanation begs the question of why Clair Saco Honda, through Perkins, judged Lavallee the better person to move the parts department forward. The plaintiff adduces evidence that Perkins, in tension with the representation made to the MHRC, testified at his deposition that he was either personally aware, or learned from Jeffers or Janelle, of a number of alleged performance problems on the plaintiff's part and that he did *not* consider the plaintiff a generally good worker. *See, e.g., id.* ¶ 117. As the plaintiff argues, *see* Response at 7, this shift in

explanation for the preference for Lavallee in itself constitutes evidence of pretext, *see, e.g.,* *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 449 (1st Cir. 2009) ("The fact that the employer gave different reasons at different times for its action surely supports a finding that the reason it ultimately settled on was fabricated."); *Trafton v. Sunbury Primary Care, P.A.*, 689 F. Supp.2d 180, 197 (D. Me. 2010) ("One way a plaintiff can establish pretext is by showing weaknesses, inconsistencies and contradictions in the employer's proffered legitimate reasons for termination.").

Beyond this, the plaintiff adduces evidence calling into doubt the veracity of Perkins' claims of serious performance issues. Perkins claimed at his deposition that he thought about terminating the plaintiff for alleged performance issues even before the Kia store closed and that he gave him multiple verbal warnings about his performance. *See* Plaintiff's Additional SMF ¶¶ 122-23; Defendants' Reply SMF ¶¶ 122-23. However, according to the plaintiff, Perkins never disciplined him, reprimanded him, or gave him any sort of verbal or written warning. *See* Plaintiff's Additional SMF ¶ 124; Donahue Decl. ¶ 13.[60] The defendants' policies provided that managers were supposed to document verbal warnings. *See* Plaintiff's Additional SMF ¶ 125; Defendants' Reply SMF ¶ 125. There were no documented verbal warnings in the plaintiff's personnel file. *See id.* When asked why he did not document the warnings given to the plaintiff, Perkins said that he did not know. *See id.* Further, when, at the plaintiff's request, Perkins

---

[60] Among examples of claims by Perkins that the plaintiff states are false: (i) that he told the plaintiff multiple times that the plaintiff did not adequately attend to service technicians when they waited at the parts counter for parts, *see* Plaintiff's Additional SMF ¶ 128; Defendants' Reply SMF ¶ 128; Plaintiff's Additional SMF ¶ 129; Donahue Dep. at 49-50; Donahue Decl. ¶ 2; (ii) that he spoke to the plaintiff about letting the phone ring without answering it, *see* Plaintiff's Additional SMF ¶ 135; Defendants' Reply SMF ¶ 135; Plaintiff's Additional SMF ¶ 136; Donahue Decl. ¶ 5; and (iii) that he spoke to the plaintiff multiple times about the plaintiff's alleged inappropriate markups of prices for parts, *see* Plaintiff's Additional SMF ¶ 137; Defendants' Reply SMF ¶ 137; Plaintiff's Additional SMF ¶ 138; Donahue Dep. at 40-41, 48-49.

provided a written explanation of the reason for his employment termination, he did not mention alleged performance issues. *See id.* ¶ 146.

While it is undisputed that, prior to choosing the plaintiff for layoff, Perkins received negative reports regarding his performance from Jeffers and Janelle, the plaintiff adduces evidence that these reports were either false or exaggerated, for example, (i) Jeffers' report that the plaintiff refused to lower prices on parts for a promotional sale, *see* Plaintiff's Additional SMF ¶ 141; Defendants' Reply SMF ¶ 141; Plaintiff's Additional SMF ¶ 142; Donahue Decl. ¶ 4, (ii) Jeffers' and Janelle's reports that the plaintiff would sit in his office, sometimes on the phone and sometimes not on the phone, while service technicians waited at the parts counter, *see* Plaintiff's Additional SMF ¶ 133; Defendants' Reply SMF ¶ 133; Plaintiff's Additional SMF ¶ 134; Donahue Decl. ¶ 2, and (iii) Jeffers' report that the plaintiff purposely tried to rile him up as well as other employees in the service department, *see* Plaintiff's Additional SMF ¶ 143; Defendants' Reply SMF ¶ 143; Plaintiff's Additional SMF ¶ 144; Donahue Decl. ¶ 14.

There is no evidence that, prior to laying the plaintiff off, Perkins offered him an opportunity to address the allegations of Janelle and Jeffers or sought input from others who had worked regularly with him, such as Hebb, Andrews, and Hooper, all of whom aver that the plaintiff ran the parts department well and/or was a very capable parts manager. *See* Plaintiff's Additional SMF ¶¶ 147-49; Defendants' Reply SMF ¶¶ 147-49.[61]  Even Lavallee believed that the Honda parts department was well run under the plaintiff's management. *See id.* ¶ 96. Further, there is evidence that Lavallee did not have an unblemished record in his work for the

---

[61] The plaintiff further argues that the defendants set forth a "false choice" between the plaintiff and Lavallee when, in fact, Perkins could have chosen to lay off either Nielsen, the parts manager in the Ford/Mazda store, or Thayer, a counterperson at Clair Saco Honda, to make an opening for Lavallee. *See* Response at 2, 9.  The argument is unavailing.  As the defendants suggest, *see* Reply at 6-7, the plaintiff has presented no evidence that laying off one of these other individuals would have been an equivalent or feasible choice from a business perspective.  The court cannot simply presume that it would have been. *See, e.g., Phair*, 2010 WL 1529398, at *4 (courts "may not sit as super personnel departments").

defendants, and that Perkins knew about the entry of a protective order against him.  *See id*.
¶¶ 94-95, 97-98.[62]

"As the First Circuit has noted, the 'sudden emergence' of performance issues could lead a trier of fact to conclude that the stated reason for termination was pretext."  *Phair*, 2010 WL 1529398, at *7.  The plaintiff carries his burden of showing that the defendants' articulated reason for his layoff is pretextual insofar as it concerns the preference of Lavallee over himself. "The jury can conclude that an employer who fabricates a false explanation has something to hide; that 'something' may well be discriminatory intent."  *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1293 (D.C. Cir. 1998).

### 3.  Plaintiff's Showing of Discrimination

I turn to the ultimate question: whether the plaintiff has made a sufficient showing of age-based employment termination to survive the defendants' motion for summary judgment.  *See Phair*, 2010 WL 1529398, at *8 ("It is not enough . . . for a plaintiff to prove that the employer's proffered basis for termination is false.  Ultimately, the plaintiff[']s burden is to prove that age was the 'but-for' cause of the employer's adverse action.") (citation and internal quotation marks omitted).  "Evidence establishing a prima facie case, in combination with evidence of pretext, can be sufficient to defeat summary judgment if a rational factfinder could conclude that unlawful age discrimination was the actual, but-for cause of the discrimination."  *Vélez*, 585 F.3d

---

[62] The defendants contend that the plaintiff's pretext argument is undermined by his admissions that he had disagreements with service technicians over which parts to stock, had at least one disagreement over pricing of parts, had at least one disagreement with regard to a sales promotion, and had a personality conflict with at least one employee in the service department, as well as by his description of conflicts between parts managers and service department supervisors as "typical."  *See* Reply at 7.  However, the evidence viewed in the light most favorable to the plaintiff, as it must be on summary judgment, indicates that Perkins did not warn, reprimand, or otherwise discipline the plaintiff with respect to these or any other issues, that, when Perkins intervened to resolve one conflict regarding pricing of brake cleaner and one conflict regarding the plaintiff's input into promotional materials, he either indicated that the plaintiff had a valid point or did not suggest that the plaintiff was out of line, and that Janelle, with whom the plaintiff had conflicts, was thought to have behaved inappropriately toward the plaintiff.

at 452. I conclude that the plaintiff makes a sufficient showing to avert summary judgment.

The defendants state that Perkins, the sole decision-maker with respect to the question of whether to lay off Lavallee or the plaintiff, simply made a business judgment to retain Lavallee because he believed that Lavallee would work best with the service department moving forward. *See, e.g.*, Reply at 3-4.

Yet, as noted above, the plaintiff has adduced evidence indicating that the reasons underlying that judgment are pretextual. Further, the plaintiff offers evidence that (i) Jeffers and Janelle, whom Perkins consulted prior to laying off the plaintiff, had referred to him as an "old geezer," Plaintiff's Additional SMF ¶¶ 104-05; Plaintiff's Suppl. Interrog. Ans. ¶ 6, (ii) Lavallee is nearly 40 years younger than the plaintiff, Plaintiff's Additional SMF ¶¶ 78, 85; Defendants' Reply SMF ¶¶ 78, 85; and (iii) several of the defendants' managers, including Perkins, spoke to the plaintiff and/or to others about when he might retire, Plaintiff's Additional SMF ¶ 89; Plaintiff's Interrog. Ans. ¶ 6; Plaintiff's Additional SMF ¶ 92; Defendants' Reply SMF ¶ 92; Plaintiff's Additional SMF ¶ 109; Plaintiff's Interrog. Ans. ¶ 6; Plaintiff's Additional SMF ¶ 90; Lavallee Dep. at 20.

The defendants argue that the "old geezer" references are irrelevant "stray remarks," made by nondecisionmakers and never communicated to Perkins, the actual decisionmaker. *See* Motion at 18; *see also, e.g., Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002) ("[S]tatements made either by nondecisionmakers[,] or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.").

Nonetheless, as the plaintiff points out, *see* Response at 11-15, "an employer may be held liable if the decisionmaker who discharged the plaintiff merely acted as a rubber stamp, or the

'cat's paw,' for a subordinate employee's prejudice, even if the decisionmaker lacked discriminatory intent[,]" *Harlow v. Potter*, 353 F. Supp.2d 109, 117 (D. Me. 2005). "It is appropriate to tag the employer with an employee's age-based animus if the evidence indicates that the worker possessed leverage, or exerted influence over, the titular decisionmaker." *Id.* (citation and internal punctuation omitted). "To invoke the cat's paw analysis, [a plaintiff] must submit evidence sufficient to establish two conditions: (1) that [the nondecisionmaker] exhibited discriminatory animus; and, (2) . . . the final decisionmaker[] acted as the conduit of [the nondecisionmaker's] prejudice." *Id.* at 115.

The plaintiff adduces evidence that, if credited, would suffice to show that Jeffers and Janelle harbored age animus against him: that they referred to him as an "old geezer" and that they made false or exaggerated reports to Perkins, the decisionmaker, concerning his job performance. *See, e.g., Normand v. Research Inst. of Am., Inc.*, 927 F.2d 857, 863, 864 n.4 (5th Cir. 1991) (term "old geezer" found to evidence discriminatory animus same); *Gallo v. Second Taxing Dist.*, 507 F. Supp.2d 164, 175 (D. Conn. 2007) (same).

In addition, there is evidence of record that Jeffers' and/or Janelle's reports influenced Perkins' decision to lay off the plaintiff rather than Lavallee. The defendants told the MHRC that Perkins attempted to make a choice between the plaintiff and Lavallee "based upon the relative comments of persons who worked closely with the parts department." Plaintiff's Additional SMF ¶ 116; Defendants' Reply SMF ¶ 116. They also represented to the MHRC that Perkins based his decision to terminate the plaintiff on input that he received from Jeffers. *Id.* ¶ 120. Perkins testified at his deposition that he factored Jeffers' and Janelle's input into his decision to terminate the plaintiff. *Id.* During one of his meetings with Perkins, Jeffers went so

far as to suggest that Perkins should replace the plaintiff with Lavallee, saying that, in his opinion, Lavallee would better manage the parts department. *Id*. ¶ 121.

For these reasons, the plaintiff makes out a sufficient "cat's paw" case of discriminatory age animus to forestall summary judgment.

While the question is closer, the plaintiff also makes out a case sufficient case to avert summary judgment that Perkins, the decision-maker, himself harbored discriminatory animus. This is so in view of:

1.　　Perkins' raising, in the context of this litigation, of alleged performance issues as the rationale for the preference to keep Lavallee over the plaintiff, despite the defendants' representation to the MHRC that the layoff was *not* predicated on such issues.

2.　　The plaintiff's showing that Perkins' claimed discipline of him for performance issues never occurred and that, in others' view, consistent with the representation made to the MHRC, he was a capable parts manager.

3.　　The plaintiff's showing that, one month before his layoff, Perkins asked him when he planned to retire, coupled with Perkins' denial that he ever asked such a question.

4.　　The nearly 40-year age difference between Lavallee and the plaintiff.

As the defendants point out, *see* Reply at 12-13, neither Perkins' single question regarding retirement nor the age difference between Lavallee and the plaintiff, standing alone, necessarily would be probative of age discrimination, *see, e.g., Banks v. Travelers Cos*., 180 F.3d 358, 367 (2d Cir. 1999) ("We recognize that a disparity in the ages of an ADEA plaintiff and her replacement or successor will not, by itself, always suffice to demonstrate invidious discrimination."); *Greenberg v. Union Camp Corp*., 48 F.3d 22, 28-29 (1st Cir. 1995) ("A single inquiry by an employer as to an employee's plans for retirement . . . does not necessarily show

animosity towards age. An employer may legitimately inquire about an employee's plans so that it can prepare to meet its hiring needs.") (citation omitted).

However, given the plaintiff's evidence that the alleged performance issues were pretextual, the temporal proximity of the alleged retirement inquiry to the layoff and the significant age disparity between the plaintiff and his replacement lend weight to his case that age was the but-for cause of his layoff. *See, e.g., Banks*, 180 F.3d at 367 (22-year disparity in age between the plaintiff and his replacement probative of age discrimination in circumstances in which jury could have believed that the plaintiff was the better-qualified candidate).

For these reasons, summary judgment on the plaintiff's ADEA and MHRA age discrimination claims should be denied.

### IV. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the defendants' motion for summary judgment with respect to Clair VW and Clair Ford, and otherwise **DENY** it.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of July, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge